IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

CIVIL ACTION NO. 2:13-cv-77(WOB-CJS)

DAKOTA HORTON                                    PLAINTIFF

VS.                 <u>MEMORANDUM OPINION AND ORDER</u>

BOONE COUNTY SCHOOL
DISTRICT, ET AL.                                DEFENDANTS

     This matter came before the Court on Defendants' motion for judgment on the pleadings (Doc. 5) on Thursday, September 5, 2013. After oral argument, the Court took the motion under further advisement. *See* Doc. 10.

     Having made a thorough review of the record, and given careful consideration to the memoranda and oral arguments of the parties, the Court now issues the following Memorandum Opinion and Order.

*FACTUAL AND PROCEDURAL HISTORY*

     In March 2006, while Plaintiff Dakota Horton was enrolled at Gray Middle School in the Boone County School District, it was determined that Plaintiff was eligible for accommodations under § 504 of the Rehabilitation Act of 1973 due to his Attention Deficit Disorder (ADD). *See* Doc. 1-1 at ¶ 16. The accommodations provided under Plaintiff's § 504 Plan included seating at the front of the classroom, peer tutoring, and extended time to turn in assignments. *Id*. at ¶ 18.

Plaintiff's § 504 Plan also provided that the § 504 Plan would be reviewed and revised, if necessary, on an annual basis. *Id*. at ¶ 20. Plaintiff's § 504 Plan was reviewed and revised in both his seventh and eighth-grade years at Gray Middle School. *Id*. at ¶¶ 22, 24.

In the fall of 2008, Plaintiff enrolled at Ryle High School. *Id*. at ¶ 25. Upon his enrollment, Plaintiff's entire student file, which included his § 504 Plan, was forwarded to Ryle High School. *Id*. at ¶ 26.

The Boone County School District's § 504 procedures provide that each § 504 Plan must be reviewed by a § 504 team as needed, but at least every three (3) years. *Id*. at ¶ 29. Additionally, the procedures provide that it is the responsibility of the appropriate § 504 team member to initiate the review and schedule a plan review meeting. *Id*.

Plaintiff asserts that during his entire tenure at Ryle High School his § 504 Plan was never reviewed or reevaluated. *Id*. at ¶ 35. As a result, Plaintiff contends, his math grades while at Ryle High School were consistently substandard. *Id*. at ¶ 36. Although Plaintiff and his parents met with his teachers to review his schedule at the beginning of each school year, his § 504 Plan was never reviewed or discussed. *Id*. at ¶¶ 38-39.

At the beginning of his senior year, Plaintiff approached Guidance Counselor Erik Arkenberg and requested to be

transferred to a different math class. *Id*. at ¶ 42. Plaintiff contends that Arkenberg advised him to seek out tutoring assistance. *Id*. at ¶ 43.

Plaintiff also asserts that despite turning eighteen (18) in December 2011, his parents never received a "Parents' Rights Statement" as is required under § 504 when a student reaches the age of majority. *Id*. at ¶¶ 44-45.

A few months prior to his graduation, Plaintiff and his mother were notified that Plaintiff might not be able to participate in his graduation ceremony due to his substandard grades. *Id*. at ¶ 46.

On April 26, 2012, Plaintiff and his mother met with "various administrators of Ryle High School, including [Plaintiff's] Algebra II teacher, Mr. Holtman, to discuss the possibility that [Plaintiff] may not graduate due to his failing Algebra II." *Id*. at ¶ 47. At this meeting, Plaintiff's mother reminded the administrators of Plaintiff's need for § 504 accommodations. *Id*. at ¶ 48. Mr. Holtman responded that he was aware of Plaintiff's § 504 Plan and he had provided Plaintiff the opportunity to sit at the front of the class and turn assignments in late. *Id*.

Ultimately, due to his grades, Plaintiff was not permitted to walk in his graduation ceremony or attend his senior class trip. *Id*. at ¶ 50.

On May 18, 2012, Plaintiff's parents met with Assistant Principal Nate Niemi to discuss Plaintiff's § 504 Plan. *Id.* at ¶ 51. At this meeting, Niemi told Plaintiff's parents that Plaintiff had been offered the accommodations outlined in his § 504 Plan, but Plaintiff had not taken advantage of those accommodations. *Id.* at ¶ 52.

On May 23, 2012, Plaintiff filed a formal student discrimination grievance alleging that his rights were violated as a result of Ryle High School's failure to review or revise his § 504 Plan. *Id.* at ¶ 54.

On June 22, 2012, the Executive Director of Boone County Schools issued a decision finding that the requirements of § 504 were violated because Plaintiff's § 504 Plan was not reviewed or revised during his tenure at Ryle High School despite the fact that teachers were aware of the § 504 Plan. *Id.* at ¶ 56. The decision also ordered (1) a comprehensive audit of the § 504 files at Ryle High School; (2) discrepancies in all § 504 files to be corrected within thirty days; (3) the teachers and administrators to participate in § 504 training; and (4) the administrative staff to consistently monitor Boone County's § 504 procedures. *Id.* at ¶ 58.

Ultimately, Plaintiff graduated during the summer of 2012. *Id.* at ¶ 59. Plaintiff applied to a number of colleges, but was advised by many that he would need to take remedial classes

4

before he could enroll in classes that would count toward his degree. *Id*. Nonetheless, Plaintiff was accepted into Gateway Community & Technical College, where he is currently enrolled. *Id*. at ¶ 60.

Plaintiff filed suit in Boone Circuit Court on April 22, 2013, and Defendants' removed the case to this Court on May 6, 2013. *Id*. at Doc. 1, 1-1.

Plaintiff requests monetary damages to compensate him for the emotional damages he suffered as a result of Defendants' failure to review and reevaluate his § 504 Plan, causing him to "struggle[] academically and miss[] out on once-in-a-lifetime opportunities of walking in the graduation ceremony along with his fellow seniors and attending the senior class trip." *See* Doc. 7 at pp. 2-3.

### *ANALYSIS*

**I. Exhaustion of Administrative Remedies**

In Counts I and II of Plaintiff's Complaint, Plaintiff asserts claims under § 504 of the Rehabilitation Act of 1973 and Title 707 of the Kentucky Administrative Regulations. *See* Complaint at ¶¶ 61-71.

Title 707 of the Kentucky Administrative Regulations was enacted to implement the requirements of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400, et seq.

*See Fayette Cnty. Bd. of Educ. V. M.R.D. ex rel. K.D.*, 158 S.W.3d 195, 199 (Ky. 2005).

"Plaintiffs bringing claims under the IDEA are generally required to exhaust their administrative remedies before bringing a civil action." *Donoho ex rel. Kemp v. Smith Cnty. Bd. of Educ.*, 21 F. App'x 293, 296 (6th Cir. 2001). "Exhaustion enables the agency to develop a factual record, to apply its expertise to the problem, to exercise its discretion, and to correct its own mistakes, and is credited with promoting accuracy, efficiency, agency autonomy, and judicial economy." *Id.* (citation omitted).

Here, Plaintiff concedes that his claim under § 504 of the Rehabilitation Act is subject to the same exhaustion requirement provided under the IDEA. *See* Doc. 7 at p. 3; *see also S.E. v. Grant Cnty. Bd. of Educ.*, 544 F.3d 633, 641-42 (6th Cir. 2008).

While Plaintiff admits that he did not exhaust his administrative remedies, he asserts that exhaustion would have been futile because he has already graduated from Ryle High School, his damages are wholly in the past, and his requested relief only includes monetary damages. *Id.* at p. 5. Thus, Plaintiff argues, exhaustion was not required. *Id.* at p. 3.

"Exhaustion is not required where application of the administrative procedures would be futile or inadequate to protect the plaintiff's rights or if the plaintiff did not

receive full notice of their rights under the IDEA." *S.E. v. Grant Cnty. Bd. of Educ.*, 522 F. Supp. 2d 826, 832 (E.D. Ky. 2007), *aff'd,* 544 F.3d 633 (6th Cir. 2008) (citation omitted). Plaintiff bears the burden of proving futility. *Id.* (citation omitted).

Plaintiff's assertion of futility relies primarily on the Sixth Circuit decision of *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912 (6th Cir. 2000).

In *Covington*, the plaintiff brought claims under 42 U.S.C. § 1983 on behalf of her disabled son, asserting that defendant school officials had used improper disciplinary measures against the child, including constantly locking him in a time-out room for lengthy periods of time without supervision. *Id*. at 913. The plaintiff sought monetary damages for physical and emotional injuries suffered as a result of the discipline. *Id*. at 914. After finding that the use of the time-out room was a disciplinary measure subject to the IDEA, the District Court dismissed the plaintiff's claim for failure to exhaust her administrative remedies. *Id*.

Reversing the District Court, the Sixth Circuit in *Covington* held, "that in the unique circumstances of this case — in which the injured child has already graduated from the special education school, his injuries are wholly in the past, and therefore money damages are the only remedy that can make

7

him whole — proceeding through the state's administrative process would be futile and is not required before the plaintiff can file suit in federal court." *Id.* at 917.

While Plaintiff's situation shares some attributes with the plaintiff in *Covington*, the "unique circumstances" in *Covington* are not present here. As argued by Defendants, the discrepancy which removes this case from the ambit of the *Covington* holding is the fact that Plaintiff's claim for relief is premised on his assertion that Defendants provided inadequate educational services, whereas the *Covington* plaintiff's claim resulted from allegations of physical injury.

The Sixth Circuit in *Gean v. Hattaway* stated that the finding of futility in *Covington* was based "on the fact that the IDEA did not provide a remedy for the type of harm allegedly suffered by plaintiff, which was more in the nature of a tort than a violation of a federal entitlement scheme." 330 F.3d 758, 774 (6th Cir. 2003) (citing *Covington*, 205 F.3d at 917). "It is when a plaintiff has a legitimate claim for 'general damages' not available under the IDEA that we have been willing to allow [a plaintiff] to bypass the administrative process detailed in that statute." *Id*.

Here, Plaintiff's claims are not "in the nature of a tort," but, rather, directly stem from Defendants' alleged failure to

8

provide Plaintiff with a Free Appropriate Public Education (FAPE). *See* Complaint at ¶¶ 65, 70.

In *S.E. v. Grant Cnty. Bd. of Educ.*, the plaintiff's situation was similar to the plaintiff's here in that she had suffered emotional damages that could not be remediated at the time of suit. 544 F.3d 633, 636 (6th Cir. 2008). However, the Court held that the plaintiff was still required to exhaust her claim brought under § 504 of the Rehabilitation Act because "when a plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies, exhaustion of those remedies is required." *Id*. at 642 (quoting *Robb v. Bethel Sch. Dist. #403*, 305 F.3d 1047, 1048 (9th Cir. 2002)).

Additionally, while Plaintiff asserts that his graduation renders his injuries "wholly in the past" and "futile," other Courts have found graduation alone insufficient to establish futility. *See Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 63 (1st Cir. 2002) (finding that plaintiff could not establish futility because of her graduation where the plaintiff could have invoked the IDEA remedial scheme throughout her high school years); *see also Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 490 (2d Cir. 2002) (holding that plaintiff's graduation did not render exhaustion of his

9

administrative remedies under the IDEA futile); *Ruecker v. Sommer*, 567 F. Supp. 2d 1276, 1298 (D. Or. 2008) (same).

While Plaintiff cannot go back and participate in his graduation ceremony or attend his senior class trip with his friends, Plaintiff has not shown that the administrative process would leave him without a remedy. In fact, Defendants admit that Plaintiff is not barred from obtaining compensatory education through the administrative process merely as a result of his graduation or his age. *See* Doc. 8 at p. 6.

Moreover, even though the IDEA does not provide for a recovery of monetary damages, Plaintiff's request for monetary damages does not render exhaustion futile. The Sixth Circuit in *Covington* – the case upon which Plaintiff primarily relies – stated that a plaintiff cannot avoid the IDEA's exhaustion requirement "simply by appending a claim for [monetary] damages. . .[because] the administrative process might ultimately afford sufficient relief to the injured party, even if it is not the specific relief that the plaintiff requested." 205 F.3d at 917 (citation omitted). While Plaintiff cannot recover monetary damages through the IDEA's administrative process, the administrative process might provide Plaintiff with other sufficient remedies for Defendants' alleged denial of a FAPE.

Furthermore, the rationale for requiring exhaustion of an IDEA claim also militates against a finding of futility in this

case. In a case similar to the case at bar, the First Circuit stated:

> It would be a hollow gesture to say that exhaustion is required — and then to say that plaintiffs, by holding back until the affected child graduates, can evade the requirement. . . [P]ermitting a plaintiff to proceed with an IDEA-based claim for money damages under another federal statute without first exhausting administrative remedies might simply encourage plaintiffs to wait to dispute the adequacy of their educational programs until after graduation precisely in the hope of recovering money damages. This would mean that plaintiffs would not actually address educational issues when they occur — a situation directly at odds with the IDEA's primary goal of ensuring the education of children with disabilities.

*Frazier,* 276 F.3d at 63.

Also, in another similar case, the Second Circuit stated:

> [A plaintiff] should not be permitted to 'sit on' live claims and spurn the administrative process that could provide the educational services they seek, then later sue for damages. Were we to condone such conduct, we would frustrate the IDEA's carefully crafted process for the prompt resolution of grievances through interaction between parents of disabled children and the agencies responsible for educating those children. The fact that the administrative process could not provide damages does not render [a plaintiff's] claim futile; [the plaintiff] could have obtained complete relief at the time, through changes to her IEPs, additional educational services, and, if necessary, remedial education.

*Polera*, 288 F.3d at 490; *see also McCormick v. Waukegan Sch. Dist. No. 60*, 374 F.3d 564, 569 n. 1 (7th Cir. 2004) ("[T]he need to exhaust should not depend upon the extent of delay in

11

litigation or the choice of a plaintiff to delay litigation until he or she graduates.").

Plaintiff asserts that since it was the Defendants' responsibility to review and reevaluate Plaintiff's § 504 Plan, Plaintiff cannot be held accountable for his failure to exhaust his administrative remedies. *See* Doc. 7 at pp. 6-7.

However, there is no assertion that Plaintiff was unaware of his rights under § 504 of the Rehabilitation Act. Also, Plaintiff admits that he, or his parents, met with school administrators in April and May of 2012 to discuss Plaintiff's § 504 Plan. *See* Doc. 1-1 at ¶¶ 48, 51. While Plaintiff asserts that this point in time was "too late for [Plaintiff's] 504 Plan to be revised," such assertion is pure speculation. Plaintiff cannot be "permitted to 'sit on' live claims and spurn the administrative process that could provide the educational services" that he sought. *See Polera*, 288 F.3d at 490.

Lastly, it is quite telling that Plaintiff's counsel at oral argument could not provide any examples of other accommodations that would have improved Plaintiff's § 504 Plan. The Court is convinced that this was not due to any deficiencies of Plaintiff's counsel, but, rather, because the "remediation of [Plaintiff's] academic deficiencies . . . is initially best addressed by educational professionals through the administrative process." *See S.E.*, 544 F.3d at 642-43.

Therefore, Plaintiff's situation is distinguishable from the situation presented by the plaintiff in *Covington*. Plaintiff has failed to carry his burden of establishing that requiring him to exhaust his administrative remedies would have been futile.

Accordingly, Counts I and II of Plaintiff's Complaint are dismissed without prejudice for Plaintiff's failure to exhaust his administrative remedies.

## II. Negligent Supervision Claims

Plaintiff also alleges state law negligent supervision claims against Defendants Randy Poe, Matthew Turner, Nate Nieme, Erik Arkenberg, and Pam Eklund. *See* Doc. 1-1 at ¶¶ 72-75.

Pursuant to 28 U.S.C. § 1367(c)(3), this Court declines to exercise supplemental jurisdiction over these claims and remands said claims to state court. Additionally, the Court declines jurisdiction under 28 U.S.C. § 1367(c)(1) as these claims involve complex issues of state tort immunities law for public officials. *See, e.g., Yanero v. Davis*, 65 S.W.3d 510 (Ky. 2001).

**THEREFORE, THE COURT BEING ADVISED, IT IS ORDERED THAT:**

1. Defendants' motion for judgment on the pleadings (Doc. 5) by, and is hereby, **GRANTED** with regard to Counts I and II of Plaintiff's Complaint and those Counts be, and are

hereby, **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies;

2. Plaintiff's negligent supervision claims seen in Count III of his Complaint are **REMANDED TO STATE COURT;** and

3. A judgment will enter concurrently herewith.

This 11th day of September, 2013.



Signed By:
*William O. Bertelsman* WOB
United States District Judge